MISSOURI PACIFIC RAILROAD COMPANY v. CAREY.

Opinion delivered May 5, 1919.

1. RAILROADS — INJURIES TO PERSONS WORKING ABOUT CARS — EVIDENCE.—In a suit for injuries to an employee of a consignee by the falling of a freight car door, evidence that the door could not be latched because it was sprung, and that the railroad company had nailed cleats on it to support it *held* sufficient to show that it was out of repair, and that defendant knew or had ample time to discover the defect by proper inspection.

2. SAME — INJURIES TO PERSONS WORKING ABOUT CARS — ASSUMED RISK.—Where a consignee's employee unloading lumber from a freight car discovered that a car door was unlatched, but upon observing certain cleats concluded that they would prevent the door from falling, and continued working until injured by the

door falling, it was a question whether he was guilty of contributory negligence, and whether he assumed the risk.

3. TRIAL—REQUEST FOR INSTRUCTION—REPETITION.—It was not prejudicial error to refuse an instruction covered by another instruction given by the court.

4. RAILROADS—ACTION FOR INJURIES—INSTRUCTION.—In a suit by a consignee's employee for injuries from a falling car door, defendants' requested instruction that it would not be liable unless it knew the door was unfastened was properly refused where the negligence charged and proved was in permitting the gate to get out of repair so that it could not be fastened.

5. MASTER AND SERVANT—ASSUMED RISK—INSTRUCTION.—An instruction on assumed risk which omitted the question of appreciation of danger *held* properly refused.

6. SAME—ASSUMED RISK—INSTRUCTION.—In an action for injuries to the person, an instruction that the jury should find assumed risk if they found the facts as recited *held* erroneous as invading the province of the jury.

7. TRIAL—INSTRUCTION—ASSUMPTION OF RISK.—An instruction directing the jury to find for plaintiff unless they find him guilty of contributory negligence *held* erroneous as assuming that defendant was negligent.

Appeal from Conway Circuit Court; *A. B. Priddy,* Judge; reversed.

*Thos. B. Pryor* and *W. P. Strait,* for appellant.

1. There was no proof of negligence on the part of the railway company, but the evidence shows a case of assumed risk and contributory negligence on part of the party injured.

2. The court erred in its instructions to the jury and in refusing those asked by defendant. If there were any defects in the door they were patent, and plaintiff assumed the risk. 82 Ark. 11; 65 *Id.* 98; 125 Id. 95.

A servant assumes the ordinary risks incident to the service and of defects known to him which are open and patent. 82 Ark. 16; 90 *Id.* 387; 68 *Id.* 316; 57 *Id.* 505; 61 *Id.* 53; 103 *Id.* 103; 107 *Id.* 528; 108 *Id.* 377; 93 *Id.* 208 ; 100 *Id.* 465; 95 *Id.* 560; 57 *Id.* 76; 123 *Id.* 119. The case in 103 Ark. 100 is not in point.

3. The law of this case was not properly given in the court's charge to the jury. 79 Ark. 437; 51 *Id.* 467; 44 *Id.* 529; 99 *Id.* 274.

*Edward Gordon* and *Mehaffy, Reid & Mehaffy,* for appellee.

The verdict is sustained by the evidence, and there is no error in the court's charge to the jury. 83 Ark. 61; 117 *Id.* 504; 126 *Id.* 377; 75 *Id.* 325. As a whole the instructions state the law. 77 *Id.* 558; 168 S. W. 116. A clear case of negligence was made by the evidence under the law. The questions of negligence and contributory negligence were properly submitted to the jury and the verdict is right.

HUMPHREYS, J. Appellee instituted suit against appellant in the Conway Circuit Court to recover damages for an injury to his foot and leg, caused by the falling of an end gate or door of an open freight car, due to the alleged negligent condition of repair of the car, end gate and its parts.

Appellant filed answer, denying that it negligently permitted the car gates, or their parts, to get out of repair, or that they were out of repair at the time of the injury. In addition to denying these and all other material allegations in the complaint, it pleaded assumed risk and contributory negligence by appellee. The cause was submitted to a jury upon the pleadings, evidence and instructions of the court, upon which a verdict was returned in favor of appellee for $3,000, and judgment rendered in accordance therewith. From the verdict and judgment, an appeal has been prosecuted to this court.

At the time appellee received the injury, he was unloading a car of lumber for J. H. Imboden & Son, which had been placed by appellant, delivering carrier, on its side track at Morrilton, for the purpose of being unloaded by the assignee, who was appellee's employer. The car contained three tiers of lumber loaded lengthwise in, and higher than the sides of, the car. The car was sitting east and west. The end gates or doors, were con-

structed of heavy iron which fitted into angle-irons or side frames at the ends of the car, and were secured at the top by means of latches on the outside, and hung on hinges at the bottom, so that the gates, or doors could be opened by unlatching and lowering them to the floor.

There is a difference between counsel as to the testimony of appellee in certain particulars. After a careful reading of his evidence, we think he testified, in substance, that he climbed upon the west end of the car of lumber for the purpose of examining it and discovered one latch on the west door or end gate unfastened. He began unloading the tier of lumber stacked in the east end of the car, leaving the other two tiers intact. When the east end was unloaded to the top of the side of the car, he discovered the east door, or end gate, was unfastened and leaning toward the lumber. It was against one piece of the lumber, but not touching the rest of it. He unloaded the north side of the tier of lumber until he was standing on the floor. He then tried to close the door for the purpose of latching it but was unable to push it back into the angle-irons, or sockets, so that it could be latched, because the door was sprung. At this time, he discovered a cleat nailed in a diagonal position on each side of the car, one end resting on the floor and the other near the top of the door for the purpose of preventing the door from falling to the floor. The cleats were one-fourth of an inch thicker than the angle-irons, or side frame, so that appellee concluded if the door should fall, it would catch on the ends of the cleats. After observing the cleats and reaching this conclusion, he made no further effort to latch the door, but continued to unload the tier of lumber next to the door with the same feeling of security as if the door had been closed and latched. When he picked up the last piece of lumber in the tier, the gate fell to the floor, passing between the cleats, and, in doing so, broke his leg just above the ankle and crushed his ankle and foot. Either on the same, or the next day, Edward Gordon and L. O. Watson inspected the door of the car while it was standing on the

side track at Morrilton, and were unable to push the door into the angle-irons, or sockets, and latch it, because the door was sprung.

F. M. Huckleberry, claim agent of appellant, and J. H. Ganner, a photographer at Russellville, who made several photographs of the car gate, showing the door, or end gate, partially open, as well as closed, testified that they were able to open and close and latch the door when they examined the car at Russellville shortly after the injury; that, on account of coal dust under the door at one corner, it made the door a little hard to close; that the door was shorter than the distance between the cleats by about an inch and a quarter on each end. The photographs evidenced the latter statement to be correct. The car was inspected at the Union Depot yards at Little Rock on November 28th, and again on December 31st by car inspectors in the employ of appellant, and found to be in a good state of repair. The inspectors discovered a bulge in the center of the door, as if something heavy had fallen on it, but it was testified that the bulge did not prevent the door from being closed.

Appellant requested the court to charge the jury to return a verdict for it under the record made, and insists that the court erred in refusing to give its peremptory instruction, for the alleged reasons that the undisputed evidence showed, first, that the end gate, or door, was not defective or out of repair, or, if so, that appellant did not know it, or had not had sufficient time by reasonable inspection to discover the defect; second, that appellee discovered the defect and appreciated the danger before he began to unload the car, and assumed the risk incident to the service; third, that he did not exercise the precaution of latching or propping the gate, or door, or standing out of the reach thereof, and, through that negligence, contributed to his own injury.

(1) Three witnesses testified that the door was sprung so that it could not be forced into its socket or frame and latched. This was sufficient legal evidence to support the finding that the door was out of repair. It

was properly inferable from the evidence that cleats had been nailed on the inside of the car diagonally from the floor to the top of the door, that appellant had discovered the defect and nailed the cleats there to prevent the door from falling. This was sufficient legal evidence to support the finding that appellant knew of the defect or that sufficient time had elapsed for appellant to discover it by proper inspection.

(2)   Under our construction of appellee's evidence as a whole, he did not discover the latches on the east door unfastened before he began to unload the lumber. The latches he discovered unfastened were on the west door and he discovered them when climbing on the car of lumber to examine it. The discovery that the east door was unlatched and leaning inward, was made after he had unloaded the tier of lumber in the east end of the car down to a level with the top of the door. This discovery, however, did not place appellee in danger so long as there was sufficient lumber left in the east tier to catch the door in case it fell. Appellee continued to unload from the north side of the tier into a dray wagon until he reached the floor on that side. He then tried to push the door into the socket and fasten the latches, but was unable to do so. At that particular time, he discovered the cleats which he concluded were nailed there to catch the door and prevent it from falling. He continued the unloading, thinking the cleats would catch the door and felt as safe in the prosecution of his work as if the door had been closed and latched. As he picked up the last stick of lumber, the door fell on his leg and foot, breaking the leg just above the ankle and badly crushing the ankle and foot. While appellee discovered the defect in the door, or gate, after partially unloading the car, he observed the cleats, which were placed there, according to his best judgment, to prevent the gate from falling; so, it cannot be said, under these circumstances, that the danger was so obvious that appellee must be deemed in law to have accepted the risk. Especially is this so after he had commenced to unload the lumber.

*C., R. 1. & P. Ry. Co.* v. *Lewis,* 103 Ark. 99. In announcing this conclusion, we do not mean to intimate that the question of assumed risk is in the case.

(3) Appellee testified that he was familiar with the character of car he was unloading and that he was familiar with the character of work he was doing; that he knew that the gate, or door, was heavy and would fall to the floor unless latched or prevented from doing so by cleats which were nailed on the inside of the car; that he thought the cleats would prevent the gate from falling, and continued his work under the belief that he was as secure from danger where he was standing, by reason of the cleats, as if the gate, or door, had been latched. Under these circumstances, it cannot be said, as a matter of law, that the danger was so obvious that an ordinarily prudent person would not have continued to work in exactly the same way appellee did. This makes the question of contributory negligence in the instant case one for the jury, because fair-minded persons might well differ as to whether an ordinarily prudent person would have continued the work after discovering the defect in the door, and the cleats nailed on the inside of the car, for the purpose of preventing the door from falling to the floor. *St. L., I. M. & S. R. Co.* v. *Martin,* 61 Ark. 549; *St. L., I. M. & S. R. Co.* v. *Hitt,* 76 Ark. 224; *St. L. & S. F. Rd. Co.* v. *Carr,* 94 Ark. 246; *Doniphan Lumber Co.* v. *Henderson,* 100 Ark. 53.

Appellant insists that the court erred in refusing to give instruction No. 4, requested by it, defining culpable negligence. The instruction requested conforms to the reasons assigned for the rule in the case of *Little Rock & Ft. Smith Rd.* v. *Duffey,* 35 Ark. 602. The instruction itself contains no error, unless it be that, in the form asked, it is argumentative. We do not think the court erred, however, in refusing to give it, because instruction No. 2, given by the court, was a complete and full definition of culpable negligence.

Again, appellant insists that the court erred in refusing to give instruction No. 6, requested by it, carry-

ing the idea that a master cannot be held responsible for a defective condition of the working place of the servant unless the master had discovered, or could have discovered, the defect by the exercise of ordinary care. Appellant cites the case of *Bauschka* v. *Western Coal & Mining Co.*, 95 Ark. 477, in support of the instruction. The rule announced in that case carried the idea suggested and is a correct rule of law, but the instruction, as requested, exempted appellant from liability unless it knew that the door was unfastened or that it had remained unfastened a sufficient length of time so that by the exercise of ordinary care appellant could have discovered and corrected the defect. This instruction, as drawn, was improper, because the gist of the negligence charged and proved was that the negligence consisted in permitting the gate to get out of repair so that it could not be pushed into its sockets and fastened, and not the fact that it was unfastened.

Again, appellant insists that the court erred in not giving instruction No. 10, requested by it, announcing the doctrine of assumed risk. This instruction was erroneous for several reasons, one of which is that it left out the question of appreciation of danger. Another is that upon the finding by the jury of a given state of facts recited in the instruction, they were instructed to find that appellee assumed the danger. It was within the province of the jury, and not the court, to say whether or not appellee assumed the danger under the facts and circumstances revealed by the evidence. The court did did not err in refusing to give said instruction. .

We deem it unnecessary to discuss any other assignments of error except the insistence of appellant that the court erred in giving instruction No. 6. That instruction is as follows:

"You are instructed that negligence is the doing something that a man of ordinary prudence would not do under the circumstances, or the failure to do something which a man of ordinary prudence under the circumstances would do; and, if you find from the evidence

in this case that Carey was doing what a man of ordinary prudence would have done under the circumstances, he is not guilty of contributory negligence, and your verdict must be for the plaintiff.''

In addition to a general objection, appellant specifically objected to this instruction because it ''directed the jury to find for appellee unless they found him guilty of contributory negligence.'' We think the effect of the instruction, as drawn, was to assume, on the part of the court, that appellant was guilty of negligence, and to instruct the jury to return a verdict for appellee, unless they found him guilty of contributory negligence. This instruction was erroneous and in direct conflict with the other instructions given by the court. It is impossible to harmonize the law announced in conflicting instructions. The jury cannot tell which instruction they should follow. *St. L., I. M. & S. R. Co.* v. *Hitt,* 76 Ark. 224; *St. L. Sw. Ry. Co.* v. *Graham,* 83 Ark. 61; *Helena Hardwood Lumber Co.* v. *Maynard,* 99 Ark. 377.

For the error indicated, the judgment is reversed and the cause remanded for a new trial.